595 So.2d 1141 (1992)
In re Albert HUDDLESTON, Jr.
No. 91-B-2029.
Supreme Court of Louisiana.
March 2, 1992.
James Reed Barrow, G. Fred Ours, Elizabeth A. Alston, New Orleans, for LSBA.
John R. Martzell, Martzell, Thomas & Bickford, New Orleans, Albert Huddleston, Jr., Kenner, for respondent.

DISCIPLINARY PROCEEDING
LEMMON, Justice.
This is a disciplinary action against a member of the Louisiana State Bar Association based on his conviction of a serious crime under La.Sup.Ct.R. XIX, § 19. The Disciplinary Board, after reviewing the evidence presented to the Hearing Committee, issued a report to this court recommending a suspension from the practice of law for three years. Respondent objected to the Board's recommendation, and the matter is now before this court under our original jurisdiction. La.Const. art. V, § 5(B).

*1142 Facts

In December of 1987 respondent entered a nolo contendere plea in federal court to an indictment charging him with making a false statement on an estate tax return in violation of 26 U.S.C. § 7206(1) (1989). The statute defines the crime in pertinent part as follows:
Any person who
(1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;
. . . . .
shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.
At the hearing at which respondent entered the plea, the prosecutor filed a document entitled "Factual Basis" which formed the basis for the judge's acceptance of the plea. The document stated that if the case went to trial, testimony and documents "would prove" respondent intentionally omitted from the estate tax return his wife's share in certain corporations and a partnership, or in certain promissory notes received for the sale of the stock of the corporations. The eight-page document recited many of the details of the investigation which led to respondent's indictment. Respondent neither accepted nor objected to the statements made by the prosecutor in the factual basis.
The judge subsequently conducted a sentencing hearing. After reviewing the presentence investigation report and engaging in a colloquy with respondent, the judge sentenced respondent to two years of imprisonment. Respondent actually served approximately thirteen months in a minimum security facility, being released in March of 1989.
In May of 1989 the Committee on Professional Responsibility, operating under the procedure then in effect in disciplinary proceedings, filed a motion in this court requesting respondent's interim suspension based on his conviction of a serious crime. This court declined to suspend respondent at the time and remanded the matter to the Committee in June of 1989 for appropriate proceedings. There was no further action by the Committee.
Effective April 1, 1990, this court adopted La.Sup.Ct.R. XIX, which provided the Rules for Lawyer Disciplinary Enforcement. The Rules abolished the Committee on Professional Responsibility and placed the responsibility for instituting disciplinary proceedings in the disciplinary counsel, which is the prosecutorial branch of the new statewide disciplinary agency.

Proceedings before the Hearing Committee
On September 26, 1990, the disciplinary counsel filed this proceeding with the Disciplinary Board. The Board set a hearing before the Hearing Committee, at which respondent represented himself. The disciplinary counsel offered into evidence the judgment of conviction, as well as the statement of factual basis submitted by the federal prosecutor at respondent's plea of nolo contendere. Respondent objected to the statement of factual basis as hearsay assertions by several declarants who were not under oath and who were not subject to cross-examination at the time of the declarations. Respondent argued that the document was nothing more than a statement of what the prosecutor had hoped to prove if the matter had gone to trial. The Hearing Committee Chair overruled the objection.
Respondent was the only witness at the hearing. He explained the circumstances leading up to the conduct which resulted in his conviction. According to respondent, he and an associate, through three closely held corporations, successfully developed a significant real estate subdivision in the 1970s. In 1977 he bought out his associate's interest in the corporations, making a $3,500,000 loan secured by the corporate stock. He also assumed loans on the real estate of about $6,000,000. Between 1977 *1143 and 1981, when his interest rate based on prime rose as much as fourteen points, he could neither sell the remaining real estate nor pay the interest on the loans. Moreover, temporary restraining orders obtained by his wife in connection with separation suits filed in 1979 and 1980 further obstructed his business operations. Believing it was necessary to place the corporations outside the marital community in order to save a crumbling real estate empire, and faced with custody of his four young children because of his wife's chronic alcoholism, he sold all of his corporate stock to his father on January 2, 1981 for $500,000 in promissory notes. He believed that amount was the fair value of the equity at that time in the severely declining market, although he had valued the corporations in a financial statement executed before the economic decline at about $6,000,000. His wife died on January 17, 1981, while his father owned the corporate stock. He hired an attorney to handle the succession and an accountant to prepare the estate tax return, but he admittedly furnished the list of assets and liabilities to both. In the meantime he and his father "reversed" the sale of the corporate stock after his wife's death, and he returned the promissory notes to his father. In providing information to the accountant for the estate tax return, he considered the possibility of listing the corporate stock, rather than the promissory notes, as an asset owned by the community at the time of his wife's death, because only he and his father knew of the transfer. He decided to list the notes, largely because of the difficulty in evaluating the stock. However, he inexplicably did not list the notes (or the stock) in the list of assets prepared for the succession attorney and the accountant. The estate tax return filed in November, 1981 also did not list either the notes or the stock. He insisted that it would have been ridiculous for him, as the well known developer of a prominent real estate venture, to intentionally omit from the return his wife's community interest in the high visibility developments and that he did not intend to break the law in transferring the corporate stock beyond his wife's control. Following the government's audit which began after his father's death, the auditor at first proposed a tax deficiency assessment based on the notes, which he was willing to accept. The government later concluded the sale to his father was not valid and proposed an assessment based on the highest value of the stock before the economic decline. (This tax assessment of about $3,500,000 was reduced later to $345,000, but the amount of tax deficiency, if any, is still involved in civil litigation.) He believed that the weight of the evidence in the criminal proceeding would result in his conviction, and on the advice of counsel negotiated for a plea of nolo contendere in order to avoid having the conviction used against him in the tax litigation. His position in that litigation is that either (1) the notes were includable in the estate which owes taxes on $500,000, or (2) if the sale to his father was not valid, the stock was includable in the estate which owes taxes on the stock's value at the time of death, the value being zero or substantially less than the government's assessment. He went into bankruptcy in 1988, and the trustee now has the corporate stock.
When questioned by the disciplinary counsel on his intent to deprive his wife of her share of the community assets, respondent admitted that the transfer to his father was a ploy in connection with a domestic dispute, but denied his intent to deprive her of the value of her assets, since he substituted assets of equal value. The disciplinary counsel then confronted respondent with the following excerpt from his colloquy with the sentencing judge:
THE COURT: When you deliberately undervalued and omitted assets, Mr. Huddleston, didn't you know that your failure to list and your deliberate misevaluation was serious violations of the law for which there were criminal penalties?
MR. HUDDLESTON: At the time that I did what I did, if Your Honor please, I must admit that the criminality of the act and the penalties associated with the act were not a part of my cognitive responses. It was not something that was a part of the decision making at the time. *1144 Obviously I'm very much aware of the consequences of that at this point, and I have become very much aware of that during the course of the investigation, during the course of the pretrial proceedings and obviously at this moment. Yes, I am aware.
THE COURT: Were you at the time?
MR. HUDDLESTON: Yes sir. I certainly have to say that at the time I was aware of the criminality and the consequences of the act. I must admit, though, that it was not a part of my decision making at the time.
THE COURT: But the decision making or the process that caused you to make that decision was of another kind of fraud, was it not, Mr. Huddleston?
MR. HUDDLESTON: I'm not sure I know what that means.
THE COURT: Well, was it not for the purpose of depriving your former wife and her heirs of assets to which they would have and you knew were entitled?
MR. HUDDLESTON: Admittedly it was for the purpose of depriving my former wife of assets, yes, sir. It was not for the purpose of depriving her children, who are also my children, if Your Honor please.
THE COURT: But what you sought to do was defraud her?
MR. HUDDLESTON: Essentially that is correct.
THE COURT: And didn't make any difference to you whether at the same time you defrauded the United States?
MR. HUDDLESTON: A defraud of the United States was not a part of the decision making process, if Your Honor please. Obviously that was a consequence and obviously the whole affair should not have been engaged in.[1]
When questioned again by the disciplinary counsel about his intent to defraud his wife, respondent asserted that his statement at the sentencing hearing was "inaccurate," the accurate version being his testimony before the Committee that he didn't intend "to take away and leave them [his wife and her heirs, his children] without assets."
In argument before the Hearing Committee the disciplinary counsel pointed out that the intentional omission of a substantial asset from an estate tax return seriously reflected on a person's honesty. Further conceding that there were many mitigating factors in this case, he recommended a suspension in the range between one year plus one day and two years.
The Hearing Committee found that the misconduct for which respondent was convicted did not involve either a breach of duty or an actual injury to a client, but rather an injury to the United States government which prosecuted him; that the misconduct did not involve the practice of law; that there was no other blemish on respondent's record since his admission in 1957; that he served his term of imprisonment without incident; that he, his second wife and his children of his first marriage had suffered and continue to suffer financial hardship resulting from the economic decline surrounding his misconduct and from his conviction and incarceration; and that he claimed to have been under stress because of his wife's alleged alcohol abuse, his responsibility for his young children, and his wife's interference with his efforts to save their financial holdings.[2] However, the Committee rejected respondent's assertions that he intended, but simply forgot, to report the five $100,000 promissory notes in the return, noting that he remembered to "reverse the sale" before his second marriage (in June of 1981) and did not sign the return until October.[3]
*1145 As aggravating factors, the Committee emphasized that respondent had attempted to defraud his wife by the sale of the corporate stock to his father and had "lied to the United States District Judge to seek a lighter sentence." Based on these aggravating factors and on respondent's "arrogant and self-centered attitude which casts serious doubt on whether respondent should be allowed to practice law and have the trust of future clients," the Committee recommended a suspension of three years, emphasizing that it was fully aware of the disciplinary counsel's lesser recommendation.[4]
The Hearing Committee submitted its findings and report to the Disciplinary Board under La.Sup.Ct.R. XIX, § 11F for review on the record and for briefing and oral argument.

Review by the Disciplinary Board
The Board first concluded that the Hearing Committee properly admitted the statement of factual basis into evidence. Then addressing the issue of extent of discipline and observing that the crime was serious enough for the judge to impose a two-year jail sentence, the Board concluded the baseline sanction was disbarment. Further considering the substantial mitigating factors, as well as the aggravating factors that respondent was not truthful in signing the estate tax return or in his statements to the judge at sentencing or in his admitted fraud of his wife, the Board recommended a suspension of three years, subject to a credit for his thirteen months of imprisonment.
Respondent objected timely in this court under La.Sup.Ct.R. XIX, § 11G to the report and the recommendation of the Disciplinary Board.[5]

Admissibility of the Factual Basis
The threshold issue is the admissibility in this disciplinary proceeding of the statement of factual basis filed by the prosecutor at respondent's plea of nolo contendere in the criminal proceeding.
In a disciplinary proceeding based on conviction of a crime, evidence of the conviction constitutes conclusive evidence of the attorney's guilt of the charged offense. The only issue thereafter is whether the crime warrants discipline and, if so, the extent thereof. La.Sup.Ct.R. XIX, § 19E. The attorney may offer any mitigating evidence which is not inconsistent with guilt of the essential elements of the crime. Id. By the same token, the disciplinary counsel may offer any evidence of aggravating circumstances attendant to the essential elements of the crime, but this evidence must be admissible under the rules of evidence. La.Sup.Ct.R. XIX, § 18B.
*1146 The statement of factual basis in this case is the report of a governmental investigation into the omission of assets from an estate tax return, and the document does not give the sources of the information developed in the investigation. Nevertheless, as observed by the concurring member of the Disciplinary Board, the admission of the statement of factual basis makes little difference in this case. The conviction itself established that respondent intentionally omitted an asset from the estate tax return. The indictment to which respondent entered the plea charged him alternatively with intentionally omitting the promissory notes or with intentionally omitting the corporate stock. Respondent resisted the admission of the statement of factual basis principally because the prosecutor's statement focused on the omission of the stock and contained an allegedly excessive valuation of the stock.[6]
While the value of the omitted asset may be very significant in the civil tax assessment litigation, the valuation was of little importance in this case unless the disciplinary counsel wanted to prove as an aggravating circumstance that the omission was of a large asset or unless respondent wanted to prove as a mitigating circumstance that the omission was of a relatively small asset. For purposes of this disciplinary proceeding, the value of the excluded asset was at least $250,000, since that was the value chosen by respondent in the sale to his father shortly before his wife's death. If the sale did in fact occur and was valid, then the notes clearly constituted an asset of the succession and should have been included in the estate tax return in that amount.
Since neither the Hearing Committee nor the Disciplinary Board utilized any information contained in the statement of factual basis other than the value of the omitted asset, any error in the admission of that document was harmless.

Extent of Discipline
The Hearing Committee's recommendation of a three-year suspension was prompted by the Committee's finding of aggravating factors in that respondent acted dishonestly by attempting to defraud his wife and engaged in deceptive practices by lying to the sentencing judge. See Standards for Imposing Lawyer Sanctions § 9.22(b) and (f).
Respondent admitted that the transfer of the stock to his father was a ploy brought on by marital discord. While the desperate tactic, even when viewed in the disastrous economic conditions of the combined depression and inflation existing at the time, cannot be condoned, it is much more likely that respondent intended a temporary deprivation of his wife's control while he attempted to salvage their real estate enterprise than it is that respondent intended to deprive his wife and children of the stock permanently. The wife could have attacked the questionable sale if she had not died, and upon her death the stock became an asset inherited by their children whom respondent was raising. Most significantly, the January transfer, whether or not motivated by dishonesty, was entirely immaterial to respondent's dishonesty in omitting the asset from the October return. The omission is the crime upon which this disciplinary proceeding is based and is the only misconduct with which respondent is charged herein. The only party possibly defrauded by the crime (as opposed to the stock transfer) was the government. We therefore decline to consider, as an aggravating factor of dishonest motive under Standards for Imposing Lawyer Sanctions § 9.22(b) (1986), any dishonesty in respondent's transferring the stock to his father.[7]
Respondent's replies to the trial judge's questioning at his plea, taken in context, cannot reasonably be construed as lying to the judge for the purpose of obtaining a *1147 favorable sentence. In reply to the judge's request for an admission that what he sought to do was to defraud his wife, respondent stated that that was essentially correct, but that he did not intend to deprive her children who were also his children. Consistent with that answer, respondent could have explained further (as he did in the disciplinary proceeding) that he simply intended to place the corporate stock and voting power temporarily beyond the control of his allegedly alcoholic wife in order to salvage his real estate holdings for the ultimate benefit of himself, as well as his wife and his children. He apparently chose not to go into a lengthy explanation in the setting of a sentencing hearing, but rather to simply concede the judge's point. There was nothing irreconcilable between respondent's disciplinary hearing statement that he transferred the stock as part of an attempt to salvage his real estate holdings for everyone's benefit and his equivocal answer to the judge at the sentencing hearing. There are many other things in this record which the Hearing Committee could have used to discredit respondent's candor before the Committee, rather than seizing upon the lying to the judge as a basis for rejecting respondent's candor to the tribunal. We therefore decline to consider, as an aggravating factor of a deceptive practice during the disciplinary proceeding under Standards for Imposing Lawyer Sanctions § 9.22(f) (1986), respondent's telling inconsistent stories to the judge and to the Hearing Committee.
We now proceed to determine the appropriate discipline without reference to the aggravating factors of dishonest conduct by attempting to defraud the wife or deceptive practice in the disciplinary proceeding by telling inconsistent stories to the sentencing judge and to the Hearing Committee.
As stated earlier, the conviction itself established that respondent intentionally omitted an asset from his wife's estate tax return. This is a serious crime which reflects on his fitness to practice law, although the seriousness in the context of a disciplinary proceeding is somewhat lessened by the fact that the omission did not involve his practice of law and did not breach any duty or cause any damage to a client. The baseline discipline for this dishonesty constituting the first professional misconduct of an attorney over a lengthy period of practice would be at least a suspension in the range of two to three years. Louisiana State Bar Association v. O'Halloran, 412 So.2d 523 (La.1982); Louisiana State Bar Association v. Schoemann, 444 So.2d 608 (La.1984).
There are several aggravating factors. Standards for Imposing Lawyer Sanctions § 9.22 (1986). The principal one is dishonest or selfish motive, since respondent apparently sought financial gain for himself and his children by avoiding payment of the taxes on the items intentionally omitted. Respondent also had substantial experience in the practice of law, although this aggravating circumstance is counterbalanced by the fact that he had no disciplinary violations or criminal charges against him during his extensive period of practice.
On the other hand, there are very substantial mitigating factors. Standards for Imposing Lawyer Sanctions § 9.32 (1986). Respondent's lack of a prior disciplinary or criminal record has already been noted. Moreover, the crime of which respondent was convicted is only a misdemeanor in Louisiana. See La.Rev.Stat. 47:1642. There is also character evidence that respondent led an exemplary business and personal life prior to and after this incident. Another mitigating circumstance conceded by the disciplinary counsel is the fact that respondent has already been punished extensively as a result of his misconduct, serving thirteen months imprisonment and suffering the related loss of his personal fortune in bankruptcy court. Respondent was also beset at the time by the personal and emotional problems associated with raising four young children and by the decline of his previously successful business.
A very significant mitigating factor is the time delay in this case. Respondent obviously was unable to practice law during his confinement. Upon his release the *1148 former disciplinary agency filed for an interim suspension, which was denied in June, 1989. The disciplinary proceeding was not immediately forthcoming because of the change in the procedure, and a formal disciplinary proceeding was not instituted until September, 1990, almost three years after the conviction and eighteen months after respondent was released from confinement. While we do not suggest the disciplinary counsel was at fault for the delay, the fact of the matter is that a delay did occur and that respondent's practice of law has been virtually non-existent since his plea in 1987.
The Disciplinary Board approved the Hearing Committee's recommendation of a three-year suspension, but allowed a credit for the thirteen months served in prison. This credit implicitly recognized the delay in the proceeding which consequently delayed the beginning of the suspension and the eventual opportunity to return to the practice of law. While we deem it inappropriate to give "credit for time served" in a disciplinary proceeding, we believe that the mitigating factor of the delay in the proceeding should bear on the length of the suspension. Viewed in that light, the Disciplinary Board's recommendation was effectively for less than two years. Further considering the very substantial mitigating factors in this case, we conclude that a suspension of one year and one day, beginning upon the finality of this judgment, is appropriate under the circumstances of this case.

Decree
For these reasons, it is ordered that Albert Huddleston, Jr. be suspended from the practice of law in Louisiana for one year and one day from the date of finality of this judgment. Respondent is to bear all costs of this proceeding.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I concur in the majority opinion but write separately to express that the factual basis introduced at a defendant's plea of nolo contendere should not always be prophylactically excluded. Under proper circumstances, a factual basis in which the respondent has manifested his adoption or belief in its truth may be admissible as a party admission even under Code of Evidence article 801(D)(2). In this proceeding, nothing in the record suggests that the factual basis was adopted by the defendant and so was properly disregarded by this court.
Moreover, ultimate questions of admissibility are for this court to decide under its original jurisdiction as the trier of facts in disciplinary proceedings. As the majority observes, La.Sup.Ct. Rule 19 § 18B provides that, except as otherwise provided in the rules, the Louisiana Code of Civil Procedure and the Louisiana Code of Evidence apply in discipline and disability cases. However, I believe that this Court intends that "the principles underlying [the evidence code] shall serve as guides to the admissibility of evidence [and that the] specific exclusionary rules and other provisions... shall be applied only to the extent that they tend to promote the purposes of the proceeding," as in workers' compensation, juvenile, and other specialized proceedings. See Louisiana Code of Evidence art. 1101 B. In my opinion, particularly in gathering evidence to support recommended sanctions, the duty of the Disciplinary Board is to receive all evidence directly bearing upon the issues to be decided in the proceeding; evidence should be excluded by the Board only if it is wholly irrelevant or rank hearsay or pure conjecture. See In re Reed, 207 La. 1011, 22 So.2d 552 (1945). Because this court and the courts of many other states have not required that the rules of evidence be adhered to strictly in disciplinary proceedings, see In re Reed, supra, and State v. Dawson, 111 So.2d 427 (Fla.1959), and cases cited therein, all other evidence should be received and given whatever consideration it deserves by the Board and this court. Evidence which appears inherently unreliable will be disregarded by this court on review of the disciplinary proceedings below.
For these reasons, I respectfully concur.
NOTES
[1] During the colloquy the judge shifted the focus from respondent's intentional omission (which constituted the crime) to his earlier and perhaps invalid (but non-criminal) transfer of the stock to his father.
[2] The Committee noted there was no other evidence of the wife's alcohol abuse or unreasonable exercise of her right to participate in control of a community asset. However, there was also no evidence to contradict respondent's assertions in this regard.
[3] Of course, the intent element was an essential element of the crime of which respondent was convicted, and he was prohibited by the rules from even introducing evidence inconsistent with any essential element of the crime.
[4] The Committee was clearly concerned that if respondent lied to the sentencing judge in order to secure a lighter sentence, the Committee should not accept his inconsistent testimony before the Committee, apparently given for the purpose of securing a lighter discipline. We disagree, as developed more fully later, that respondent's testimony before the Committee was irreconcilable with the responses to questions by the sentencing judge or suggested that he lied to the judge.
[5] In disciplinary actions to date under the Rules for Lawyer Disciplinary Enforcement, this court has employed a temporary procedure for reports filed by the Disciplinary Board. When no party objected to the Board's report and recommendation, the matter has been presented to this court at a regular certiorari conference for review of the proceeding and consideration of the report and recommendation, without additional briefing or oral argument by the parties. To date this court has utilized this procedure to approve with brief memorandum opinions the recommendations of the Disciplinary Board in In re Michael Villa, 586 So.2d 149 (La.1991); In re Allyn P. Roussel, 586 So.2d 150 (La.1991); and In re David J. Dennis, 590 So.2d 52 (La. 1991). On the other hand, when any party objected to the Disciplinary Board's report and recommendation, the matter has been placed on this court's docket for briefing and oral argument. To date this court has rendered brief memorandum opinions either adopting or modifying the recommendation of the Disciplinary Board. See In re Daniel Bishop, 588 So.2d 376 (La.1991); In re David Levingston, 587 So.2d 1190 (La.1991); In re Michael Dorsey, 587 So.2d 1190 (La.1991); and In re Patrick Harrington, 589 So.2d 479 (La.1991). This case marks the first time this court has rendered a full opinion in a disciplinary proceeding under Rule XIX.

On February 7, 1992, this court adopted an amendment to La.Sup.Ct.R. XIX, § 11G, which sets forth the above procedure in more detail.
[6] Respondent's position was that only the wife's community share of the promissory notes was includable in the estate, but alternatively, if the sale of the stock was invalid, then only one-half of the value of the corporate stock at the time of his wife's death (which he asserts was zero or an amount far less than $250,000) was includable in the estate.
[7] Of course, the conviction itself established dishonesty in intentionally failing to report an asset for the apparent purpose of financial gain.