819 So.2d 305 (2002)
In re Mark V. MARINOFF.
No. 2001-B-2584.
Supreme Court of Louisiana.
June 7, 2002.
*306 Charles B. Plattsmier, Bernadine Johnson, Baton Rouge, Joseph L. Shea, Shreveport, Counsel for Applicant.
Mark V. Marinoff, Hillar C. Moore, III, Baton Rouge, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This attorney disciplinary matter arises from a recommendation of the disciplinary *307 board that the formal charges against respondent, Mark V. Marinoff, be dismissed. Following a request of the Office of Disciplinary Counsel ("ODC") for review of that recommendation, this court ordered briefing from the parties and set the matter on the docket for oral argument.

UNDERLYING FACTS
On the evening of November 17, 1994, respondent, an assistant city/parish attorney in Baton Rouge, went to the Pastime Bar & Lounge in Baton Rouge with his secretary, Sandra Book.[1] Respondent and Mrs. Book consumed a significant amount of alcohol over the course of the evening, and the evidence shows that both were intoxicated when they departed the bar together in respondent's new Ford Mustang convertible.[2] Traveling down River Road in East Baton Rouge Parish at a high rate of speed, respondent lost control of the vehicle and struck a ditch, causing the car to roll over several times before it came to rest upside-down on the levee, several hundred feet from the point where it first left the road. Respondent received relatively minor injuries in the accident; Mrs. Book was ejected from the car and thrown some distance away.
A short time later, Jerry Ghoram and Veronica Hayes were driving down River Road past the scene of the accident when they heard someone yelling for help. They stopped and found respondent standing away from his vehicle, complaining that he had "wrecked his f * * * ing car." Respondent also said that everyone in the car was dead and that he had killed everyone in the car. Mr. Ghoram and Ms. Hayes went immediately to the nearest house and called 911. When they returned, respondent was standing near the road. He asked them several times to take him away from the scene, indicating he did not want any attention drawn to himself because he had "already been in trouble once before."[3] Contrary to his earlier statements that everyone in the car was dead, respondent now claimed that there was no one else in the car and that no one was dead. He demanded repeatedly that Mr. Ghoram and Ms. Hayes not call for help because he did not need any help. When told that an ambulance was already on its way, respondent cursed Mr. Ghoram and Ms. Hayes, "telling us to just take him away from the scene, there wasn't nobody in the car, ..." However, Ms. Hayes spotted a child's car seat near the wreckage and decided to look around to make sure that no one else had been injured in the accident. She then stumbled over Mrs. Book, who was sprawled on the ground near a fence, severely injured. Ms. Hayes stayed with Mrs. Book and prayed with her until the ambulance arrived.
Louisiana State Trooper Terry Mayeaux arrived at the accident scene after everyone had gone. He found respondent's car upside-down on the levee, took some photographs, and called for a tow truck. After learning that the car belonged to respondent, whom he knew well, Trooper Mayeaux went to the hospital where respondent and Mrs. Book were being treated. At the hospital, respondent claimed to have no recollection of the accident. He repeatedly denied that he was driving the car when the accident occurred; *308 instead, he insisted that he had been asleep and that a man named "Jason" was driving. Knowing there was no other male passenger in the car, Trooper Mayeaux told respondent to "get off of the Jason story." Respondent made no further reference to "Jason" but continued to maintain that he (respondent) was not the driver. Nevertheless, following an investigation by the district attorney's office, respondent was indicted by a grand jury on a misdemeanor charge of negligent injuring, a violation of La. R.S. 14:39. The state subsequently filed a bill of particulars alleging that respondent was driving the car at the time of the accident.
The criminal case proceeded to trial in July 1997. Respondent did not testify during the two-day bench trial. After considering the evidence presented, the district court concluded that sufficient evidence existed to find beyond a reasonable doubt that respondent was driving the car at the time of the accident and that the accident resulted from criminal negligence which caused grave injuries to Mrs. Book. The district court also concluded that respondent made a conscious effort to conceal his involvement in the accident:
[I]t was apparent from the very beginning your purpose was to shield your involvement in this accident. You first indicated that the other persons in the vehicle were dead. You later stated that you were the only person in the vehicle and you made repeated attempts to have them simply take you away from the scene, not to wait for the ambulance, not to stay there and receive medical attention for your own injuries. Your primary concern was to be taken away from the scene of the accident and not have any attention drawn to you in this incident. That indicates, in my mind, an active intention on your part to evade any liability for what occurred in this case. Had the passersby not used their own good judgment and had they taken you away from the scene and had they not taken the effort to look for other people who were in the vehicle, there is a good chance that Sandy Book would not have survived her injuries.... When you go to the hospital, you speak to a trooper who happens to be a friend and acquaintance of all the parties involved,... you indicated that there was a third person, a phantom driver, an individual by the name of Jason who you said took you away from the Pastime because you were too intoxicated to drive and that that person had fled the scene of the accident. Again, in the court's estimation, that was a deliberate attempt on your part to shield yourself from any responsibility in this case.... [I]t's clear to me from your actions at the scene and at the hospital you not only remembered the accident, but you were conscious enough of your own actions to make deliberate efforts to conceal your culpability in this matter.
The district court found respondent guilty of negligent injuring and sentenced him to six months imprisonment with all but fifteen days suspended, which were ordered to be served on alternating weekends. Respondent sought review of his conviction and sentence by application for supervisory writs, which were denied by the court of appeal and by this court.[4]

DISCIPLINARY PROCEEDINGS

Formal Charges
Through counsel, respondent self-reported his conviction to the ODC in July 1997. The ODC filed one count of formal charges on January 16, 1998, alleging violations *309 of Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.[5] Respondent answered the formal charges and denied that his misdemeanor conviction reflected adversely on his fitness as a lawyer.

Formal Hearing
At the formal hearing, the ODC introduced documentary evidence in support of the formal charges, including the transcript of respondent's criminal trial and sentencing.
Respondent testified on his own behalf, but indicated he has a very limited recollection of the evening of the accident. Describing his condition that night as "out of it," respondent testified that he remembers going to the Pastime and drinking with Mrs. Book, but the next thing he remembers is "being in an ambulance."[6] Respondent attributed his inability to recall the accident itself, or the events which occurred immediately thereafter, to a concussion he claimed to have suffered in the accident. Respondent specifically denied any recollection of asking Mr. Ghoram and Ms. Hayes to take him away from the scene of the accident. However, he admitted he "may have said those things, ... I don't recall." Respondent testified that the accident and its aftermath caused a great deal of harm to his family, both emotionally and financially,[7] and strained his relationship with Mr. and Mrs. Book, with whom he no longer speaks.[8]
Respondent also called as witnesses Frank Gremillion, an attorney and former member of the Disciplinary Board and the Committee on Professional Responsibility, and retired Judge Frank Saia. Both of these witnesses testified that in their opinion respondent's conviction of negligent injuring does not adversely reflect upon his fitness to practice law.

Recommendation of the Hearing Committee
After consideration, the hearing committee recommended that the formal charges against respondent be dismissed, on the ground that the ODC failed to prove the alleged violations by sufficient clear and convincing evidence.
As a preliminary matter, the committee noted that it was not bound by the factual findings made in respondent's criminal trial because his conviction was not yet final at the time of the hearing. Furthermore, after considering the testimony of the witnesses and the evidence presented, the committee concluded that respondent's actions on the night of the accident do not constitute a violation of the Rules of Professional Conduct. In particular, the committee found respondent's actions do not reflect adversely on his honesty, trustworthiness, or fitness as a lawyer. In reaching this conclusion, the committee primarily relied on its determination that *310 respondent was not being dishonest when he stated he suffered a head injury in the accident and consequently had no recollection of the events of that evening.[9]
The ODC filed an objection to the hearing committee's failure to find a violation of the professional rules.

Recommendation of the Disciplinary Board
The disciplinary board reluctantly accepted the findings and recommendation of the hearing committee and agreed that the formal charges should be dismissed. Based on its review of the record, the board concluded there was no manifest error in the committee's factual findings that respondent was unable to remember the accident and that his memory loss was attributable to a concussion he suffered in the accident. While the board indicated it probably would have reached a different conclusion had it been the trier of fact, it recognized the committee's findings were not clearly wrong:
It cannot be said that the Committee committed manifest error when it chose to believe respondent's testimony that he could not remember the accident or explain his actions post-accident over the trial judge's belief that Respondent's actions were intentional and calculated to shield himself from responsibility. Certainly, Respondent's claim of memory loss is convenient and were this Board free to make an independent factual finding on this issue, unfettered by the manifest error standard of review, perhaps a different conclusion would be reached.
Having found no manifest error in the committee's factual findings, the board accepted the committee's legal conclusion that respondent's actions did not violate the Rules of Professional Conduct. In particular, it noted that in the absence of a finding of intentional, deliberate, or calculated behavior on respondent's part, there was no conduct that reflected adversely on his honesty, trustworthiness, or fitness as a lawyer, nor conduct that is dishonest, deceitful, or prejudicial to the administration of justice for purposes of Rule 8.4. Accordingly, the disciplinary board recommended that the formal charges against respondent be dismissed.
The ODC sought review in this court of the disciplinary board's recommendation. This court set the matter on the docket for oral argument and ordered briefing from the parties "addressing the issue of whether the disciplinary board erred in dismissing the charges against respondent, and if so, what type of sanction would be appropriate in this case."[10]

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana *311 State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In disciplinary proceedings based upon an attorney's conviction of a crime, evidence of the conviction constitutes conclusive evidence of the attorney's guilt of the charged offense, and the attorney may not offer any evidence which is inconsistent with the essential elements of the crime. In re: Huddleston, 595 So.2d 1141 (La.1992). The difficulty presented in the case at hand is that the conduct which forms the basis of the disciplinary charges encompasses more than the criminal offense itself. In particular, we must determine whether respondent acted intentionally in attempting to draw suspicion away from himself following the accident. In the context of respondent's criminal trial, the district court made a specific factual finding that respondent acted intentionally in attempting to shield himself from culpability; however, the fact that the offender intentionally engaged in deceitful conduct is not an essential element of the crime of negligent injuring. Rather, the sole element of the crime, as set forth in La. R.S. 14:39, is "the inflicting of any injury upon the person of another by criminal negligence." "Criminal negligence" is defined in La. R.S. 14:12 as follows:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
Reading La. R.S. 14:39 together with La. R.S. 14:12, it is clear that an intent to deceive persons in order to shield the offender from culpability following an accident is not an essential element of the crime of negligent injuring. Accordingly, the district court's factual finding that respondent intended to deceive others to shield himself from culpability was not essential to the conviction. Respondent is, therefore, not precluded from offering evidence on this issue in a subsequent bar disciplinary proceeding.
While respondent's post-accident conduct is not an essential element of the crime under La. R.S. 14:39, it is highly relevant to the question of whether he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation for purposes of Rule 8.4(c). The ODC proved by clear and convincing evidence that respondent made the post-accident statements.[11] Taken objectively, the content of the statements evidences an intent to deceive or misrepresent the facts, as the thrust of the statements was that respondent was the sole occupant of the vehicle, a fact which was unquestionably false. Therefore, the ODC satisfied its burden of proving by clear and convincing evidence that respondent made statements which violated Rule 8.4(c). At this point, the burden shifted to respondent to prove his lack of culpability for the statements.
Respondent argued in defense that he suffered a head injury in the accident and as a result should not be held legally responsible for what he said after the accident. In order to assert this defense, *312 respondent was essentially required to prove two elements: (1) that he sustained a head injury, and (2) that the nature of the head injury was such that it impaired his consciousness and ability to understand what he was saying.
As to the first element, the hearing committee accepted respondent's testimony that he sustained a head injury as a result of the accident. While the evidence on this point is somewhat questionable, we cannot say that factual finding is clearly wrong based on our review of the record.
With regard to the second element, the record demonstrates that respondent introduced no evidence, such as testimony from expert witnesses, which would have established that the head injury he suffered in the accident was sufficient to impair his responsibility for the statements. Ordinary human experience suggests that head injuries can encompass a range of conditions, from total unconsciousness to mild disorientation. In the absence of any evidence which would prove respondent's injury was significant enough to impair his consciousness, we find the hearing committee erred when it automatically assumed that respondent's head injury completely absolved him of any responsibility for his statements. On the evidence presented, we cannot say respondent proved his head injury was sufficient to deprive him of culpability for his statements.[12]
Having found the ODC proved a violation of Rule 8.4(c), we now turn to the appropriate sanction for respondent's misconduct. In doing so, we are mindful that the purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
We have found that respondent's post-accident conduct involved elements of fraud, deceit, or misrepresentation in violation of Rule 8.4(c). Such conduct is particularly egregious because it occurred while respondent was serving as an assistant city/parish attorney. This court has previously held that an attorney occupying a position of public trust is held to a higher standard of conduct than an ordinary attorney. In re: Naccari, 97-1546 (La.12/19/97), 705 So.2d 734; In re: Huckaby, 96-2643 (La.5/20/97), 694 So.2d 906. It is also significant that respondent's accident and the subsequent criminal proceedings received some coverage in the local media. Such adverse publicity causes harm to the public's perception of the legal profession. In re: Bankston, 01-2780 (La.3/8/02), 810 So.2d 1113.
*313 Although no actual harm resulted from respondent's post-accident conduct, there was clearly a great potential for harm. Mrs. Book was thrown from the car in the accident, and she suffered grave injuries as a result. Had the bystanders accepted respondent's statement that he was the sole occupant of the car, a strong possibility exists that Mrs. Book's body would not have been discovered and that she would not have survived her injuries.
Considering these facts, we conclude respondent engaged in fraud, deceit, or misrepresentation which had the potential for causing injury. The baseline sanction for such misconduct is a suspension from the practice of law.[13] As aggravating factors, we recognize respondent's prior disciplinary record, vulnerability of the victim, and his substantial experience in the practice of law (admitted 1984). In mitigation, we find respondent made full and free disclosure to the disciplinary board, as demonstrated by his self-reporting of the misconduct. Other mitigating factors include respondent's good character and reputation and the imposition of other penalties resulting from his criminal conviction.
Considering the facts of this case, we conclude the appropriate sanction for respondent's misconduct is a suspension from the practice of law for a period of six months.

DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Mark V. Marinoff be suspended from the practice of law in Louisiana for a period of six months. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
VICTORY, J., concurs.
NOTES
[*] Retired Justice Walter F. Marcus, Jr., assigned as Justice ad hoc, sitting for Associate Justice John L. Weimer, recused.
[1] Mrs. Book's husband, Larry, was also an assistant city/parish attorney, and the evidence shows that Mr. and Mrs. Book were close personal friends of respondent and his wife.
[2] Later that evening, respondent's blood alcohol level measured .232; Mrs. Book's blood alcohol level was .178.
[3] Respondent was apparently referring to his 1984 arrest for driving while intoxicated.
[4] State v. Marinoff, 99-1605 (La.11/19/99), 749 So.2d 668.
[5] Notably, the ODC elected not to proceed under Supreme Court Rule XIX, § 19, relating to an attorney's conviction of a "serious crime."
[6] Respondent can recall events which occurred after he arrived at the hospital, such as seeing his wife, receiving medical treatment, and talking to Trooper Mayeaux.
[7] Respondent lost his job with the city/parish attorney's office after he was convicted of negligent injuring.
[8] Mr. and Mrs. Book filed a civil suit against respondent and his liability insurer following the accident. That suit has been settled for an undisclosed sum.
[9] The committee also determined there was no clear and convincing evidence to establish that respondent was driving his car after he and Mrs. Book left the Pastime. The disciplinary board later determined this finding was clearly wrong. At oral argument before this court, respondent's counsel conceded that respondent would no longer contest that he was the driver. In light of this concession, we now consider it established that respondent was driving his car at the time of the accident, and we will not discuss this issue further.
[10] In re: Marinoff, 01-2584 (La.1/09/02), 805 So.2d 131.
[11] It is noteworthy that respondent testified he was unable to remember making the statements, but admitted he could not prove he did not make them.
[12] Objectively, respondent's statements tend to indicate he was not babbling incoherently at the scene of the accident, but had understanding of his situation. For example, respondent was conscious of the fact that he had been involved in an accident, as his first words to the bystanders were to the effect that he had "wrecked his f * * * ing car." Likewise, respondent was aware that there could be criminal ramifications as a result of the accident, indicating he did not want any attention drawn to himself because he had "already been in trouble once before." Respondent was presumably remembering his prior DWI arrest, which suggests his memory was not impaired.
[13] The evidence is insufficient to support the conclusion that respondent made the post-accident statements with the conscious intent to prevent the bystanders from discovering Mrs. Book and tending to her injuries. If the evidence did support such a conclusion, respondent would almost certainly face disbarment.