# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #003

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **19th day of January, 2024** are as follows:

**PER CURIAM:**

2023-B-00364          IN RE: WILLIAM M. MAGEE

                 Public reprimand imposed. See per curiam.

                 Genovese, J., dissents.

SUPREME COURT OF LOUISIANA

NO. 2023-B-0364

IN RE: WILLIAM M. MAGEE

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, William M. Magee, a suspended attorney.

**PRIOR DISCIPLINARY HISTORY**

Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1978.

In 2018, we considered a disciplinary proceeding involving respondent's use of forged quitclaim deeds to obtain ownership of immovable property in St. Tammany Parish belonging to absentee owners. Respondent did not apprise the trial court of these defective deeds at the time he sought declaratory judgments. For this misconduct, we suspended respondent from the practice of law for two years. *In re: Magee*, 18-0383 (La. 1/30/19), 263 So. 3d 845 ("*Magee I*").

Neither party filed an application for rehearing in *Magee I*. Accordingly, the court's judgment became final and effective on February 13, 2019.

Against this backdrop, we now turn to a consideration of the misconduct at issue in the instant proceeding.

## UNDERLYING FACTS

At the time of the judgment in *Magee I*, respondent was representing his longtime friend, Jerry Dupont, in civil litigation pending in St. Tammany Parish. *State Farm Fire & Cas. Ins. Co. v. Dupont Air Conditioning & Heat, Inc.*, No. 2018-12767 on the docket of the 22nd JDC, Division "A." The plaintiff, State Farm, represented by attorney Thomas J. Lutkewitte, filed suit to collect approximately $14,000 in insurance premiums from Mr. Dupont's company. On February 7, 2019, respondent filed a motion to withdraw as counsel of record for Mr. Dupont. He also notified Mr. Lutkewitte of his withdrawal and pending suspension by letter dated the same day.

On February 11, 2019, respondent sent Mr. Lutkewitte a letter via email offering to settle the Dupont case for $4,000. Another lawyer at Mr. Lutkewitte's firm, Conor Lutkewitte, responded on February 13, 2019 by tendering a counteroffer of $7,000.

On February 18, 2019, respondent directed his legal assistant, Marie Clairain-Savell, to respond to State Farm's settlement offer with a counteroffer of $5,500. Ms. Clairain-Savell emailed the counteroffer the same day. The signature block on the email identified respondent as the author of the email and the corresponding address is listed as respondent's former law office. Opposing counsel did not respond to the February 18 email. On February 26, 2019, Ms. Clairain-Savell sent a second email to Conor Lutkewitte asking for a reply to the counteroffer made on February 18. Again, there was no response to this inquiry.

## DISCIPLINARY PROCEEDINGS

On February 20, 2019, Thomas Lutkewitte filed a complaint against respondent with the ODC. In August 2021, the ODC filed formal charges against respondent, alleging that his conduct as set forth above violated Rules 5.5(a)

(engaging in the unauthorized practice of law), 5.5(e)(3)(v) (the practice of law includes negotiating or transacting any matter for or on behalf of a client with third parties), and 8.4(a) (violation of the Rules of Professional Conduct) of the Rules of Professional Conduct.

Respondent answered the formal charges and denied any misconduct. He asserted that his staff's contact with opposing counsel was "meant to be completed before the effective date of his suspension" and that "the short time period thereafter when contact occurred by staff, not Respondent, represents a harmless error."

In light of respondent's answer, the matter proceeded to a formal hearing on the merits. Prior to the hearing, the ODC filed a pre-hearing memorandum in which it suggested that respondent be adjudged guilty of the charged rule violations, but that no additional suspension be imposed, inasmuch as respondent had applied for reinstatement to the practice of law from his suspension in *Magee I*.[1] In his pre-hearing memorandum, respondent argued that the "isolated incident at issue was not an unauthorized practice of law," and therefore that the formal charges should be dismissed.

*Formal Hearing*

The hearing committee conducted a formal hearing on February 22, 2022. Both respondent and the ODC introduced documentary evidence. The ODC called the following witnesses to testify before the hearing committee: Thomas Lutkewitte and Conor Lutkewitte, State Farm's counsel in the Dupont case, and Sarah Taylor Bradley, an attorney who leased space in respondent's law office. Respondent called his legal assistant, Marie Clairain-Savell, and his client, Jerry Dupont, to testify; he also testified on his own behalf and on cross-examination by the ODC.

---

[1] Respondent filed a petition for reinstatement in July 2021. That proceeding has been stayed pending the outcome of the instant matter.

3

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee made findings of fact, including the following:

On January 30, 2019, respondent was suspended from the practice of law for two years in *Magee I.* Respondent and the ODC agreed that February 13, 2019 was the last day that respondent could practice law.

Upon issuance of the court's order in *Magee I*, respondent and his legal assistant began closing his law practice. This included providing notice to clients and notice to the courts via motions to withdraw.

At the time of the court's order in *Magee I*, respondent was representing Dupont Air Conditioning & Heating Services, LLC in a suit filed by State Farm to recover certain insurance premiums. On February 7, 2019, respondent notified his client and all counsel in the Dupont case of the suspension order. He also filed an *ex parte* motion to withdraw as counsel of record, which the trial judge signed on February 12.[2]

On February 7 or shortly thereafter, respondent dictated a letter for Ms. Clairain-Savell to prepare. On February 11, respondent sent the typed letter to Thomas Lutkewitte offering to settle the Dupont case for a payment of $4,000 "within one week." This letter was transmitted through Ms. Clairain-Savell.

On February 13, the last day that respondent could practice law, Conor Lutkewitte sent an email to respondent at 11:35 a.m. advising that the $4,000 offer was rejected and that State Farm would settle for $7,000.

---

[2] The committee was disturbed that respondent took any action in the Dupont case after he filed the motion to withdraw on February 7, 2019. The committee reasoned that the time between filing a motion to withdraw and the signing of the order allowing withdrawal "is probably best utilized to take minimal steps to *protect* the client, not take steps that are contrary to the effort to withdraw." [Emphasis in original.] Nevertheless, the committee felt that respondent's actions taken after February 7 but before February 14 were not before it.

On February 18, Ms. Clairain-Savell sent the following email to Conor Lutkewitte:

| | |
|---|---|
| **From:** | Marie Clairain-Savell [marie@wmageelaw.com] |
| **Sent:** | Monday, February 18, 2019 2:36 PM |
| **To:** | 'Conor Lutkewitte' |
| **Cc:** | 'William Magee-Business' |
| **Subject:** | RE: State Farm v. Dupont |

Mr. Dupont asked that I send this over to you...let's split the difference, settling at $5,500.00.  Please pass this along to your client and advise further.

***William M. Magee, J.D.***
**Mediator/Arbitrator**
207 East Gibson Street
Covington, LA 70433
Phone: 985-893-7550
Facsimile: 985-893-7596
Email: bill@wmageelaw.com
Website: www.wmageelaw.com

CONFIDENTIALITY NOTICE
This message and any documents accompanying it are intended for the use of the individual or entity named above in this message and may contain information from the Law Offices of Magee & Associates, Attorneys which is confidential, privileged and exempt from disclosure, copying, distribution or use of the contents of this message and any reliance on the information contained in this message is strictly prohibited. If you have received this message in error, please notify us by return email of this error and delete immediately.

Respondent suggested that he met with Mr. Dupont on February 13 after the email from Conor Lutkewitte and dictated the above email to Ms. Clairain-Savell on February 13.  The committee found this was not plausible, as respondent knew his deadline was the same day.  No documents, notes, or other emails were supplied in support of this position, and Mr. Dupont was unable to recall the chronology of events.  The committee found respondent's account "was in the nature of a finessed narrative instead of simply telling the truth."

Ms. Clairain-Savell appeared to be a very diligent and longtime assistant to respondent who would promptly attend to her work.  She understood that she had to follow the lead of the attorney and that she could not negotiate.  She testified that the substance of the February 18 email was captured by her from an email from respondent and that she forwarded it to Conor Lutkewitte at respondent's direction.  She had concerns about doing this, but respondent said it was okay since it was coming from her.

The committee concluded that a rational evaluation of these facts leads to the conclusion that respondent was in contact with Mr. Dupont **after** February 13 to discuss a counteroffer and that respondent sent Ms. Clairain-Savell an email on February 18 which she captured in the email that then followed to Conor Lutkewitte. If respondent had been in contact with Mr. Dupont on February 13, in the face of his impending deadline, he would have called Conor Lutkewitte or sent him an email immediately. The committee found these actions by respondent were an effort to circumvent the order of suspension in *Magee I*.

The February 26 email to Conor Lutkewitte was sent by Ms. Clairain-Savell without direction from respondent.

Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.

The committee determined respondent violated duties owed to the public and the legal profession. In contravention of his suspension order, respondent knowingly and intentionally took actions that constitute the practice of law. The committee noted that respondent led a client and an employee to believe that it is "okay to do something circuitously that could not be done directly." The committee commented that a lawyer with respondent's years of experience knows that such conduct is not acceptable. There was no evidence that respondent's misconduct caused actual harm to his client, but there was injury to the profession and the legal system in that respondent flouted the rules of the profession in the face of an order of suspension. Based on the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is suspension.

The committee determined the following aggravating factors are present: a prior disciplinary record, deceptive practices during the disciplinary process, refusal

to acknowledge the wrongful nature of the conduct,[3] and substantial experience in the practice of law. The committee determined the only mitigating factor present is the absence of a dishonest or selfish motive.

Based on these findings, and considering the prior jurisprudence dealing with similar conduct, the committee concluded that respondent's misconduct involved "a single incident which was undertaken with incredibly poor judgment." Accordingly, the committee recommended respondent be publicly reprimanded and be required to attend Ethics School. The committee also recommended that respondent be assessed with the costs and expenses of this proceeding.

Respondent filed an objection to the hearing committee's report.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and adopted same, with minor clarifications.

First, the board clarified that respondent *telephoned* Mr. Dupont on February 13, 2019 after receiving the email from Conor Lutkewitte; he did not indicate in his testimony that he actually met in person with Mr. Dupont on that date. Second, at the hearing respondent changed his testimony from his sworn statement concerning how he asked Ms. Clairain-Savell to relay Mr. Dupont's settlement counteroffer to Conor Lutkewitte. At his sworn statement, respondent testified that on February 13, 2019, he *dictated* instructions to Ms. Clairain-Savell to send what later became the February 18 email to Conor Lutkewitte. At the hearing, respondent instead asserted that he personally *told* Ms. Clairain-Savell to send the counteroffer by email, and he assumed this happened on February 13, but was not sure of this date. The board

---

[3] The committee was troubled by respondent's testimony regarding "ways he felt he could still perform the actions of a lawyer through mediation or through a power of attorney," and commented that "these are not tools to practice law without a license."

found that neither of these clarifications affect the committee's subsequent findings that (1) it was not plausible that respondent was in contact with Mr. Dupont on February 13; and (2) it was not plausible that respondent relayed Mr. Dupont's settlement counteroffer to Ms. Clairain-Savell on February 13 in order for her to forward it by email to Conor Lutkewitte. As determined by the committee, had respondent been in contact with Mr. Dupont on February 13, in the face of his impending suspension, he would have immediately called Conor Lutkewitte or made certain that an email was sent to him that day. Moreover, the board noted that while respondent asserted at the hearing that he *told* Ms. Clairain-Savell what information to include in the February 18 email sent to Conor Lutkewitte, Ms. Clairain-Savell testified that she captured the substance of the February 18 email *from an email* sent to her by respondent, and she then sent it to Conor Lutkewitte. The board found that while the evidence could support a conclusion that anytime between February 14 through February 18 respondent sent Ms. Clairain-Savell the email containing Mr. Dupont's settlement counteroffer, the conclusion drawn by the committee that respondent sent the email to Ms. Clairain-Savell on February 18 is also a permissible view of the evidence. In a civil context where the fact finder is presented with two permissible views of the evidence, the fact finder's choice between them is not clearly wrong. Accordingly, the board specifically adopted the committee's factual finding that on February 18, respondent sent Ms. Clairain-Savell the email containing Mr. Dupont's settlement counteroffer, which she was directed to forward to Conor Lutkewitte.

Based on these factual findings, the board determined respondent's conduct violated the Rules of Professional Conduct as alleged in the formal charges.

The board found that respondent violated duties owed to his client and to the legal profession. His actions were knowing and intentional. There is no evidence that respondent's conduct caused actual harm to Mr. Dupont, but potential harm to

Mr. Dupont was present in that had Mr. Lutkewitte negotiated a settlement with respondent not knowing he was suspended, the settlement could later have been questioned. The profession has been harmed, as respondent has flouted the authority of the court by practicing while suspended. Based on the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction is suspension. The board agreed with the aggravating and mitigating factors found by the committee.

Considering these findings, the court's prior jurisprudence discussing similar misconduct, and the totality of respondent's misconduct, the board recommended respondent be suspended from the practice of law for one year, with this suspension to run consecutively to respondent's suspension imposed in *Magee I*. The board further recommended that respondent attend Ethics School and that he be assessed with the costs and expenses of this matter.

Respondent filed an objection to the board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record establishes by clear and convincing evidence that on February 18, 2019, respondent directed his legal assistant to send a settlement counteroffer to opposing counsel. As this conduct occurred after the effective date of respondent's suspension in *Magee I*, it constitutes the unauthorized practice of law and therefore violated the Rules of Professional Conduct as charged in the formal charges.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to his client and the legal profession. His actions were knowing and intentional, causing actual and potential harm. The applicable baseline sanction is suspension.

The following aggravating factors are present: a prior disciplinary record, deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law.

However, the record also supports a finding of significant mitigating factors. In addition to respondent's lack of a dishonest or selfish motive, we place emphasis on the mitigating effect of the ODC's considerable delay in instituting disciplinary charges in this matter. The record reveals the ODC became aware of the misconduct in early 2019 when it received the complaint from Mr. Lutkewitte, but did not institute formal charges until August 2021. Notably, these charges were filed approximately one month after respondent filed an application for reinstatement

from his suspension in *Magee I*, and the ODC relied on these charges as a basis to seek and obtain a stay from the hearing committee considering respondent's application for reinstatement.

We have recognized that "[s]ome delay in disciplinary proceedings is inherent in the process." *Louisiana State Bar Ass'n v. Causey*, 393 So. 2d 88, 93 (La. 1980). However, when the delay results in prejudice to the respondent, it may be considered a mitigating factor which bears on the severity of the discipline to be imposed. *See In re: Huddleston*, 595 So. 2d 1141, 1148 (La. 1992). While we do not find sufficient evidence in the record to conclude the ODC's delay in instituting charges was intentional, we believe the timing caused prejudice to respondent by delaying his ability to seek reinstatement from his earlier suspension.

Under these specific facts, any additional period of suspension would be unduly punitive. We find respondent's misconduct is adequately addressed by a public reprimand.

In light of this sanction, we find there is no reason for any further delay in the consideration of respondent's application for reinstatement. Accordingly, without expressing any opinion on the merits of the application for reinstatement, we exercise our plenary original jurisdiction to direct the hearing committee to lift its stay and consider the application for reinstatement in an expeditious manner.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that William M. Magee, Louisiana Bar Roll number 8859, be and he hereby is publicly reprimanded. It is further ordered that any stay of consideration of respondent's application for reinstatement from his prior suspension be immediately lifted. All costs and expenses in the matter of this disciplinary

proceeding are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.